24CA0694 Peo v Gibson 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0694
El Paso County District Court No. 23CR982
Honorable Samuel Evig, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Katariina Michelle Gibson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Kit Timothy Beikmann, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Leigh Horton, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Katariina Michelle Gibson, appeals the judgment of conviction entered against her for distribution of a controlled substance (fentanyl) resulting in death[1] and her sentence to twenty-eight years in the custody of the Department of Corrections (DOC).  Gibson contends that the trial court erred by (1) allowing the jury to have unfettered access during its deliberations to a video recording of her custodial interrogation (the recording) without first addressing whether law enforcement advised Gibson of her rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and whether Gibson waived those rights; (2) failing to instruct the jury on intervening cause — and relatedly — failing to find that there was insufficient evidence for the jury to conclude that her distribution of fentanyl proximately caused the victim's death; and (3) sentencing her to twenty-eight years in the DOC.  We affirm the conviction and sentence.

---

[1] Gibson was also convicted of introducing contraband in the second degree, but she does not appeal that conviction or the associated sentence.

## I.    Background

¶ 2    The jury heard evidence from which it could reasonably have found the following facts.

¶ 3    Gibson struggled with substance abuse for much of her life and spent time in and out of jail for various drug-related convictions.  In 2022, she was sentenced to supervised probation for possession of a controlled substance.  After her release, she missed scheduled drug tests and failed to report to detox as ordered.

¶ 4    Gibson eventually tested positive for multiple drugs, including fentanyl.  She was subsequently arrested and placed into the custody of the El Paso County Jail for failing to comply with her probation terms.  Gibson smuggled seven fentanyl pills into the jail in the waistband of her pants.  In a recorded phone call from the jail, Gibson told a friend she "may or may not have had candy when I got here, but you know, . . . I got rid of it."

¶ 5    While in custody, Gibson met Rhianna Moret, who shared a cell with the victim, Renee Lowrance.  Moret testified that she obtained two fentanyl pills from Gibson and gave them to Lowrance

to settle a debt.  On January 20, 2023, Lowrance died in her cell due to an accidental fentanyl overdose.

¶ 6     Before her connection to Lowrance's death was discovered, Gibson was released to a sober living facility.  Two days later, she missed a mandatory drug test and failed to appear at her next court hearing.  Gibson was taken back into custody.  That same day, Detective Jessica Brooke-Hess, who was investigating Lowrance's death, interviewed Gibson about her involvement in the death.  During the interview, Gibson admitted she was currently under the influence of fentanyl.

¶ 7     Brooke-Hess also interviewed Moret about her role in helping Lowrance obtain the pills.  According to the arrest affidavit, Moret told detectives that she saw Lowrance return from using the jail's phones with a pill, wrap it in paper, crush it, and snort it.  According to Moret, Lowrance laid down to take a nap and she never woke up.  At that time, Moret did not indicate that she directly gave the fentanyl to Lowrance.

¶ 8     Gibson was charged with distribution of a controlled substance (fentanyl) resulting in death and introducing contraband

3

in the second degree.[2]  After a trial, the jury convicted her of both offenses.  The trial court sentenced Gibson to a controlling term of twenty-eight years in DOC custody.

## II.   The Recording

¶ 9       Gibson contends that the trial court erred by admitting the recording without making findings about whether Gibson had received and validly waived her *Miranda* rights before the interrogation, and by allowing the jury to have unfettered access to the recording.  We discern no error.

### A.   Additional Facts

¶ 10      On the morning of Gibson's arrest, Brooke-Hess and another officer interrogated her at the jail about the circumstances of Lowrance's death.  Although the interrogation was recorded, the audio is garbled and difficult to hear.  At trial, Brooke-Hess testified about the events leading up to the interrogation, including advising Gibson of her *Miranda* rights, and that Gibson said she understood her rights, waived them, and decided to speak to the officers.

---

[2] Gibson was also charged with an additional count of distribution of a controlled substance (fentanyl); however, the prosecution dismissed that charge.

¶ 11    Brooke-Hess testified that during the interrogation — which lasted about twenty minutes — Gibson made the following statements:

- It was her fault Lowrance died and that she felt guilty.

- She felt comfortable selling pills to Moret but would not have provided them to Lowrance because she was aware that Lowrance had been in jail long enough to have a decreased tolerance for fentanyl.

- Even though Lowrance ultimately decided to take the pills, Gibson was still responsible for Lowrance's death because Lowrance would not have had the opportunity to ingest fentanyl pills if Gibson had not brought them into the jail.

¶ 12    At trial, the prosecution offered into evidence a flash drive containing the recording. Gibson's counsel did not object, and the court admitted the flash drive. Later, during the jury instruction conference, Gibson's counsel objected to giving the jury unfettered access to the recording during deliberations and, alternatively, asked the court to limit the number of times the jury could view it.

¶ 13     The court admitted the recording without limitation over Gibson's counsel's objection after finding that recorded interviews of defendants are treated differently from other types of recordings and are admissible without limiting the jury's access to them. *See Carter v. People*, 2017 CO 59M, ¶¶ 20-22. The trial court thus concluded that it was appropriate to allow the jury to have full access to the recording. Moreover, the court concluded that limiting the number of times that the jury could review the recording was particularly unwarranted in this case because the audio was difficult to hear and the jury might want to review and play back the recording to better understand the garbled portions.

### B.     Applicable Law

### 1.     Preservation and Standard of Review

¶ 14     As noted, Gibson's counsel did not object to the admission of the recording, and as it relates to Gibson's appellate argument, her counsel made no objection based upon an allegedly inadequate *Miranda* advisement. Thus, we review Gibson's *Miranda* argument for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. An error is plain if it is so obvious and substantial that the trial court should have sua sponte prevented the error without the benefit of an

6

objection. *Cardman v. People*, 2019 CO 73, ¶ 34. We reverse for plain error only if the error undermined the judgment to the point that it cast serious doubt on the reliability of the conviction. *Hagos*, ¶ 14.

¶ 15 Gibson's counsel did object to allowing the jury unfettered access to the recording during its deliberations. We therefore review that contention under the harmless error standard, which requires reversal only when the error affects the substantial rights of the parties. *Id.* at ¶ 12. A trial court's ruling on jury access to exhibits during deliberations is reviewed for an abuse of discretion. *DeBella v. People*, 233 P.3d 664, 666-67 (Colo. 2010). "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People v. Johnson*, 2021 CO 35, ¶ 16 (citations omitted).

### 2. A Jury's Unfettered Access to a Defendant's Recorded Statements

¶ 16 Typically, before providing the jury with unfettered access to a video-recorded statement, the trial court must determine whether the exhibit "will aid the jury in its proper consideration of the case, and even if so, whether a party will nevertheless be unfairly

prejudiced by the jury's use of it." *DeBella*, 233 P.3d at 668 (citation omitted). A court abuses its discretion if it fails to make such an assessment. *Id.*

¶ 17　Despite this general rule, the court may permit the jury unfettered access to a defendant's own detrimental out-of-court statements. *Carter*, ¶ 21. As the supreme court explained, such statements have "probative force for reasons more related to the adversary process than any narrative or testimonial value," and "allowing the jury access to exhibits evidencing such statements simply does not implicate the same danger of undue emphasis inherent in permitting the jury access to some, but not all, of the testimonial evidence." *Id.* Thus, the supreme court has distinguished recordings of a defendant's own out-of-court statements from recordings of other kinds of statements and "categorically allowed [such recordings] into the jury room, for whatever consideration the jury [may] give them." *Rael v. People*, 2017 CO 67, ¶ 26 (citation omitted).

## C. Analysis

### 1. *Miranda* Claim

¶ 18    As noted, Gibson argues on appeal that the trial court erred by not sua sponte requiring the prosecution to provide additional evidence that Gibson received and validly waived her *Miranda* rights before the interrogation. Specifically, Gibson reasons that, because her credibility was a primary factor for the jury to consider in establishing whether she gave Lowrance the fentanyl, combined with her admission to being under the influence of fentanyl, the court plainly erred by failing to require the prosecution to prove that Brooke-Hess advised Gibson of her *Miranda* rights and obtained a valid waiver of these rights.

¶ 19    The People counter that the trial court was not required to make findings on the adequacy of the *Miranda* advisement and waiver because Brooke-Hess testified that she advised Gibson of her *Miranda* rights and Gibson waived those rights. Gibson did not challenge the adequacy of the advisement or the validity of the waiver before or at trial. We agree with the People.

¶ 20    First, Gibson's counsel could have moved to suppress the recording either before or at trial. *See* Crim. P. 41(g) ("A defendant

9

aggrieved by an alleged involuntary confession or admission may make a motion under this Rule to suppress said confession or admission."). Given the absence of a pretrial suppression motion or an objection, we cannot conclude that the trial court erred by not sua sponte raising the issue.

¶ 21 Moreover, the absence of an objection hampered the trial court's ability to assess the validity of the advisement and waiver. Generally, to determine the validity of a *Miranda* waiver, a court must consider whether the advisement reasonably conveyed the defendant's rights. *Sanchez v. People*, 2014 CO 56, ¶ 12. Gibson argued in her opening brief that the court should have considered whether Brooke-Hess advised Gibson that (1) she had the right to remain silent; (2) she had the right to have an attorney present; and

(3) any statements she made during the interrogation could be used against her.[3]  *See Miranda*, 384 U.S. at 444.

Brooke-Hess testified as follows:

> I began by advising [Gibson] of her *Miranda* rights, which isn't exactly how you hear it on TV.  I said that she had the right to remain silent, that anything she said could and would be used against her in a court of law.  She was advised that she had the right to an attorney, could speak to an attorney prior to speaking to me or have one with her when she was being questioned.  [Gibson] said that she understood all those rights and she waived them and decided that she would like to speak to me.

¶ 22    This advisement addressed the only issues raised in Gibson's opening brief.  Therefore, we perceive no plain error in the lack of additional judicial findings on the adequacy of the *Miranda* advisement.

---

[3] In her reply brief, Gibson argues for the first time that Brooke-Hess's advisement was inadequate because it did not advise Gibson that if she could not afford an attorney, one would be appointed for her.  *See People v. Trujillo-Tucson*, 2022 CO 31, ¶ 16 n.3 (Before interrogating a person in custody, law enforcement must advise the person "that they have the right to remain silent; that anything they say may be used against them; that they have the right to the presence of an attorney during the interrogation; and that, if they are unable to afford an attorney, one will be appointed.").  But we do not address arguments raised for the first time in a reply brief.  *See People v. Grant*, 174 P.3d 798, 803 (Colo. App. 2007).

¶ 23    Gibson does not meaningfully develop her contention that the trial court should have sua sponte found her waiver of her right to remain silent invalid. *See People v. Platt,* 81 P.3d 1060, 1065-66 (Colo. 2004) (listing a variety of factors the court may consider in evaluating whether, under the totality of the circumstances, a defendant validly waived their *Miranda* rights). We therefore decline to address the argument further. *See Townsend v. People*, 252 P.3d 1108, 1113 (Colo. 2011) (explaining that we will not consider constitutional arguments for the first time on appeal).

### 2.    Allowing the Jury Unfettered Access to the Recording

¶ 24    Gibson also contends that the trial court erred by allowing the jury unfettered access to the recording without first making the necessary findings under *DeBella* because (1) the recording was unfairly prejudicial, and (2) it did not aid the jury's proper consideration of the case because it was duplicative of Brooke-Hess's testimony and hard to understand. *See* 233 P.3d at 668.

¶ 25    The People counter that the trial court did not abuse its discretion by giving the jury full access to the recording because it was mostly inaudible and helped the jury observe the demeanor of

12

both Gibson and Brooke-Hess during the interrogation.  We agree with the People.

¶ 26     The trial court properly allowed the jury unlimited access to the entire recording during deliberations.  Trial courts may permit juries to have such access to a defendant's recorded statements during a police interrogation because of the statements' probative value.  *Rael*, ¶ 26; *Carter*, ¶ 21.

¶ 27     Gibson's admissions that she felt guilty for bringing the pills into the jail and that she played a role in Lowrance's death have high probative value.  Furthermore, even though the audio is difficult to hear, the recording gave the jury additional context for Gibson's incriminating statements — such as the conversational tone of the interrogation, Gibson's apparent lucidity, and her ability to follow the conversation and meaningfully engage with Brooke-Hess.  While Brooke-Hess testified about the nature of the interview, there was distinct value in allowing the jury to hear and observe Gibson's demeanor rather than relying solely on the detective's account.

¶ 28     For similar reasons, we reject Gibson's assertion that the recording was duplicative of Brooke-Hess's testimony.  Hearing a

13

defendant's version of events is fundamentally different from hearing a detective's summary of the defendant's statements.

¶ 29 We are also unpersuaded by the argument that the trial court should have limited how many times the jury could watch the recording. Given the difficulty of understanding the recording, as the court noted, the jurors may have wanted to watch the incriminating portions of the recording multiple times to ensure that they heard Gibson correctly. Thus, we discern no abuse of discretion in the court's ruling to allow the jury unlimited access to the recording during its deliberations. *Carter*, ¶ 21; *Rael*, ¶ 27.

### III. Jury Instruction and Sufficiency of the Evidence Related to Proximate Cause

¶ 30 Gibson argues that the trial court erred by not providing the jury an instruction on what constitutes an intervening cause. Relatedly, she argues that there was insufficient evidence to support a finding that her distribution of fentanyl caused Lowrance's death. Gibson argues that Moret caused Lowrance's death by giving her the fentanyl.

14

### A. Applicable Law

#### 1. Standard of Review

¶ 31    "We review de novo whether the jury instructions, when taken as a whole, accurately inform the jury of the law." *People v. Trujillo*, 2025 COA 22, ¶ 24 (*cert. granted* Jan. 12, 2026).  We review a trial court's decision whether to give a particular jury instruction for an abuse of discretion.  *Id.*

¶ 32    It is not necessary to assert an objection at trial to preserve an argument that there was insufficient evidence to support a conviction.  *See McCoy v. People*, 2019 CO 44, ¶ 22.  It is, however, necessary to preserve an argument that the court erred by failing to provide a particular jury instruction.  *See People v. Howard*, 89 P.3d 441, 446 (Colo. App. 2003).  Because Gibson failed to request or tender an intervening cause jury instruction, we review that claim under the plain error standard.  *See Hagos*, ¶ 14.

#### 2. Sufficiency of the Evidence

¶ 33    In reviewing the sufficiency of the evidence, we recognize that it is the fact finder's province "to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence." *People v. Kessler*, 2018 COA 60, ¶ 12.  "[I]f there is

15

evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element . . . ." *Id.* (quoting *People v. Chase,* 2013 COA 27, ¶ 50).  And if reasonable minds could reach different conclusions concerning the defendant's guilt, the evidence is sufficient to sustain the conviction.  *Id.*  We therefore consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *McCoy,* ¶ 63 (citation omitted).

### 3. The Interplay Between a Proximate Cause and an Intervening Cause

¶ 34    Proximate cause is any "cause which in natural and probable sequence produced the claimed injury."  *Martinez v. People,* 2024 CO 6M, ¶ 13 (citation omitted).  Generally, a defendant who distributes fentanyl to a person proximately causes "the death of another person who used or consumed the material, compound, mixture, or preparation that contained fentanyl."  § 18-18-405(2)(a)(III)(A), C.R.S. 2025.  However, in the context of a fentanyl

16

overdose that results in someone's death, if a defendant can establish a break in the causal connection between the "natural and probable sequence [that] produced the claimed injury" and the defendant's act, then they are no longer the proximate cause of the death. *People v. Beverly*, 2025 CO 18, ¶¶ 24-25 (quoting *Martinez*, ¶ 13).

¶ 35 An event that breaks the chain is known as an intervening cause. *Id.* at ¶ 25. To constitute an intervening cause, the event must exhibit three qualities: "(1) the defendant must not have participated in the event, (2) the event must not have been reasonably foreseeable, and (3) the event must have been a cause but for which the injury would not have occurred." *Id.*

### B. Analysis

¶ 36 Gibson contends that the direct and circumstantial evidence, viewed as a whole and in the light most favorable to the People, was insufficient to prove beyond a reasonable doubt that Gibson's actions proximately caused Lowrance's death. Specifically, Gibson points to the conflicting evidence; Moret initially claimed that Gibson directly gave Lowrance the fentanyl but later testified that *she* gave Lowrance the pills. During the interrogation, Gibson also

17

indicated that she would never have given Lowrance fentanyl due to her decreased tolerance for the drug given the length of time she had been at the jail. Relatedly, Gibson argues that the trial court erred by failing to instruct the jury on an intervening cause due to the uncertainty regarding Moret's involvement in providing Lowrance the pills.

¶ 37    The People respond that there was sufficient evidence for a jury to find that Gibson was the proximate cause of Lowrance's death and that there was no reason for the court to give the jury an intervening cause instruction in the absence of defense counsel requesting such an instruction.

¶ 38    First, viewing the evidence in the light most favorable to the People, we conclude that there was sufficient evidence by which a reasonable juror could find, beyond a reasonable doubt, that Gibson proximately caused Lowrance's death. *See McCoy*, ¶ 63. It is undisputed that Gibson unlawfully brought fentanyl into the jail. Regardless of whether she gave the fentanyl to Lowrance directly or through Moret, the record supports the jury's conclusion that Gibson's conduct was the act that, in a natural and probable sequence, led to Lowrance's death. *See Martinez*, ¶ 13.

18

¶ 39    Likewise, we decline Gibson's invitation to reject Moret's testimony that Gibson gave the pills directly to Lowrance. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution. Viewed through that lens, there was competent evidence by which a reasonable juror could conclude that Gibson gave the fentanyl pills to Lowrance directly. *See Kessler*, ¶ 12.

¶ 40    And unlike the facts presented in *Beverly*, the trial produced no evidence that Lowrance intentionally took her own life by ingesting the fentanyl. *See Beverly*, ¶¶ 8, 13. Therefore, we reject Gibson's contention that the evidence plainly required the court to sua sponte instruct the jury on the concept of an intervening cause. Recall that, under *Beverly*, an intervening cause finding is warranted only if, among other factors, the defendant offers credible evidence that she did not "participate[] in the event." *Id.* at ¶ 25.

¶ 41    It is undisputed that Gibson brought the fentanyl pills into the jail and gave them to either Lowrance or Moret. Under either scenario, Gibson participated in the events that caused Lowrance's death. Thus, she could not meet the first element necessary to warrant an intervening cause instruction. Therefore, we discern no

error, much less plain error, in the trial court's decision not to sua sponte give the jury an intervening cause instruction.

## IV.    Sentence Fairness

¶ 42    Gibson next contends that the trial court abused its discretion by sentencing her to twenty-eight years in DOC custody.  We disagree.

## A.    Standard of Review and Applicable Law

¶ 43    Trial courts have extremely broad discretion when sentencing a defendant within the presumptive range.  *People v. Rice*, 2015 COA 168, ¶ 8.  We will not overturn a sentencing decision absent an abuse of discretion.  *Id.*

¶ 44    Unlawful distribution of fentanyl that proximately causes the death of someone who uses the fentanyl is a level 1 drug felony (DF1).  § 18-18-405(2)(a)(III)(A).  The presumptive sentencing range for a DF1 is between eight and thirty-two years.  § 18-1.3-401.5(2)(a), C.R.S. 2025.

¶ 45    "We will uphold a sentence if it is (1) within the range required by law; (2) based on appropriate considerations as reflected in the record; and (3) factually supported by the circumstances of the case."  *People v. Palermo*, 2026 COA 12, ¶ 31 (citing *People v. Fuller*,

791 P.2d 702, 708 (Colo. 1990)).  Appropriate considerations may include, "among other things, the nature of the offense; the offender's character, rehabilitative potential, and criminal history; any aggravating or mitigating circumstances; and the protection of the public."  *Id.* at ¶ 32; *see* § 18-1-102.5(1), C.R.S. 2025 (explaining that a sentence serves the following purposes, among others: punishment of a convicted offender; assuring the fair and consistent treatment of all convicted offenders; promoting rehabilitation; addressing the offender's individual characteristics; promoting acceptance of responsibility and accountability by offenders; and providing restoration and healing for victims).  "While the court may not unduly emphasize one factor to the exclusion of others, it may properly find certain factors to be more compelling than the others."  *People v. Kirby*, 2024 COA 20, ¶ 66.

## B.    Analysis

¶ 46    Gibson argues that the court abused its discretion by exceeding the prosecution's sentencing request of twenty-five years and instead sentencing Gibson to twenty-eight years in DOC custody, and in doing so, unduly emphasizing her danger to society to the exclusion of other factors, *see id.*  She also argues that her

sentence is disproportionate when compared to the sentences of other defendants who committed similar offenses.

¶ 47    The People argue that the twenty-eight-year sentence was not an abuse of discretion because it was within the presumptive range and the court properly considered a multitude of factors.

¶ 48    We agree with the People that the trial court considered a variety of factors in sentencing Gibson to twenty-eight years in the DOC, including Gibson's failure to take advantage of the multiple opportunities she had to complete drug treatment programs, continually reoffending — including two prior drug distribution offenses — and the fact that Lowrance died as a result of Gibson's actions.  Specifically, the court found:

> This system has offered [Gibson] numerous attempts to engage in and demonstrate a rehabilitation.  She's failed them all.  There is no program that a court can impose and there is no order a court can make that guarantees a person will change, unless the person decides to change themselves.
>
> I'm aware of Ms. Gibson's history and some of the tragedies that happened in her personal life.  But I can't help but note just how many different opportunities Ms. Gibson threw away. . . .
>
> . . . .

This is a situation where someone addicted to drugs decided to continue selling them and continue poisoning others.

The [pre-sentence investigation report] notes this, but . . . I have no sentence available short of prison to address the individual characteristics that Ms. Gibson has shown.

. . . .

She took poison into a jail. She gave that poison to another person in exchange for telephone calls and treats. I have a lot of people appear in front of me who are addicts. Some of them battle every single day. You are not being sentenced because you're an addict. You are being sentenced because you snuck drugs into a jail, you gave them to another person, and killed her. That is the crime you are being sentenced for. Not for being addicted. Under these circumstances, with a tremendous aggravation that this [c]ourt is finding, [the c]ourt is imposing a sentence of [twenty-eight] years in the Department of Corrections.

¶ 49    Contrary to Gibson's assertions, nothing in the record suggests that the trial court unduly emphasized one sentencing consideration at the expense of others. The sentence, while higher than the prosecution's request, was still within the presumptive range for a DF1. *See* § 18-1.3-401.5(2)(a). The court also explained its rationale for imposing the substantial sentence — including concerns about public safety as well as the fact that Lowrance died

23

as a consequence of Gibson's actions. Both of those factors are appropriate considerations when imposing a sentence. *See* § 18-1-102.5(1).

¶ 50 We also reject Gibson's suggestion that her sentence contravenes the General Assembly's decision to eliminate mandatory sentences for this offense. Doing away with mandatory sentences in this context cuts both ways because it empowers courts to consider both mitigating and aggravating factors and tailor a sentence to the circumstances.

¶ 51 Nor are we persuaded by Gibson's reliance on other district court cases in which a trial court sentenced the defendant to fewer years than Gibson's sentence. In at least three of those cases, the defendant was sentenced to twenty years in prison. While Gibson's sentence was longer than twenty years, it was nonetheless within the presumptive sentencing range. And there are few decisions that appellate courts are less equipped to second-guess than a sentencing court's exercise of its discretion to impose a sentence within the presumptive range. *See Fuller*, 791 P.2d at 708 ("If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is

24

factually supported by the circumstances of the case, an appellate court must uphold [it].").  Based on its familiarity with Gibson and the particular circumstances of her offense, we conclude that the trial court did not abuse its discretion by sentencing her to twenty-eight years in DOC custody, and we decline to disturb its sentence.

## V.     Disposition

¶ 52     The trial court's judgment is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.